# NON-NEGOTIABLE SEA WAYBILL

# TERMS AND CONDITIONS

# WALLENIUS WILHELMSEN LINES AS

## 1. DEFINITIONS

(a) "Carrier" means Wallenius Wilhelmsen Lines AS, vessels used in the carriage, their owners, and operators. The Carrier will be referred to as "Carrier" or as "WWL."

(b) "Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this sea waybill.

(c) "Combined Transport" means a Carriage for which the Carrier agrees to be responsible from the place of receipt indicated on the face of this sea waybill to the place of delivery indicated on the face of this sea waybill.

(d) "Container" includes any container, trailer, transportable tank, flat or pallet, packaging or any similar article used to consolidate cargo and any ancillary equipment.

(e) "Goods" mean the cargo described in the sea waybill. If the Containers, equipment or other packaging are not furnished by the Carrier, these Containers equipment and other packaging are also "Goods."

(f) "Merchant" means the shipper, consignor, holder, notify party, receiver of the Goods, and any person, including any corporation, company, or other legal entity owning the Goods or entitled to the possession of the Goods or acting on behalf of the Goods or of any such entity. Their obligations are joint and several.

(g) "Package" means the largest means used to prepare cargo for transportation including but not limited to a skid, pallet, Container, trailer or carton.

(h) "Port to Port Shipment" means a shipment from one port to another port. The Carrier would be responsible for the Goods only from the Port of Loading indicated on the face of this sea waybill to the Port of Discharge indicated on the face of this sea waybill.

(i) "Subcontractor" includes but is not limited to owners, operators and charterers (other than the Carrier), stevedores, terminal and groupage operators, road and rail transport operators and any independent contractor employed directly or indirectly by the Carrier in performance of the Carriage.

(j) "Third Party On-Carriage" means the transfer of the Goods and the responsibility for the Goods from WWL to another carrier. The duty, responsibility, and liability of WWL cease at on-carriage. See Clause 4.

(k) "WWL" means Wallenius Wilhelmsen Lines AS.

(l) The following terms shall apply if the Merchant has requested to use the Bolero System:

If the Merchant wishes to use the Bolero system or another electronic system the Merchant agrees that the Bolero System or the other electronic system, will act as agent for the Merchant rather than the Carrier. In consideration for the Carrier's agreement to allow the Merchant to use the Bolero system, or another electronic system, the Merchant agrees to indemnify and hold the Carrier harmless from any damage suffered by the Carrier as a result of the Bolero system or other electronic system. The Merchant agrees to abide by Bolero Rulebook, Operating Procedures, and other documents, and to give the Carrier notice or instructions in a timely fashion. If another electronic system is used, that system's rules, regulations, and procedures may affect the issuance, transfer, pledge or surrender of the documents related to this carriage. The Merchant agrees to abide by those rules, regulations, and procedures and to give the Carrier any required notice or instructions in a timely fashion.

In the case of any conflict between this sea waybill and the Bolero Rulebook or other document, or another electronic system's rules or procedures, this sea waybill will prevail.

## 2. ACCEPTANCE OF SEA WAYBILL AND CARRIER'S TARIFFS, RULES, AND RATES

In accepting this sea waybill, the Merchant agrees to be bound by all its terms, conditions and limitations, whether printed, stamped, or written on the front or back of the sea waybill, as well as the provisions of the Carrier's published freight Tariffs, Rates, and Rules, as fully as if they were all specifically accepted in writing by the Merchant, even if local customs or practice are to the contrary. A copy of the relevant tariffs may be obtained from any agent of the Carrier. In the event of a conflict between the terms of a tariff and the terms of this sea waybill, the terms of this sea waybill will govern.

## 3. SCOPE OF THIS SEA WAYBILL

This sea waybill evidences the contract of carriage from the time the Carrier accepts complete custody and control of the Goods at the Place of receipt or the Port of loading described on the face of this sea waybill until the Carrier delivers custody or control of the Goods at the Port of discharge or the Place of delivery described on the face of this sea waybill. The terms and conditions of this sea waybill apply during the Carriage described by this sea waybill on all modes of transportation and storage. They apply before the Goods are loaded onboard any means of transportation, and after the Goods are discharged from any means of transportation as well as while the Goods are onboard any means of transportation.

## 4. THIRD PARTY ON-CARRIAGE

The Merchant and the Carrier may indicate in a clause on the face of this sea waybill, that the Goods will be on-carried beyond the Port of discharge or Place of delivery. WWL is not responsible for such on-carriage and is not liable for loss or damage of or to the Goods during on-carriage. WWL will act only as agent of the Merchant to arrange such on-carriage. WWL's duties and responsibilities will be completed at the place of on-carriage as if WWL had delivered the cargo according to Clause 6.

## 5. RECEIPT FOR CONDITION AND QUANTITY OF GOODS

The Carrier acknowledges receipt only of the external, apparent condition of the Goods' packaging, including containers, and the quantity of the Goods or their packages, including Containers, that are visible and apparent to the Carrier and that the Carrier has reasonable means to check. The Carrier receives a sealed Container, and is only responsible to deliver the Container intact with the seal intact. The Carrier will not be liable for loss, damage, or injury caused by improper stuffing of Containers that has been performed by the Merchant or on the Merchant's behalf. This exception shall include, but shall not be limited to a defective condition of the Container that should have been obvious to the Merchant, its agent, or servant at the time the Container was loaded. The Merchant shall be liable for and shall hold the Carrier harmless from any and all loss, damage or injury caused by the Goods which by their nature are dangerous, fragile, perishable, or are improperly stuffed or secured into the Container or are insufficiently packaged.

Goods are not to be shipped inside vehicles or other cargo unless the Carrier agrees in writing to accept such additional goods and extra freight is paid. The Carrier is not responsible for such additional goods unless the Carrier agrees in writing to carry the goods.

## 6. DELIVERY

The Carrier will deliver the Goods by one of the following means:

(a) Place the Goods at a place reasonably fitted for relinquishing control of the place of delivery, and give the person entitled to delivery an opportunity to take assume custody and control of the Goods unless the nature of the Goods or customs, law, or regulations at the place of delivery suggests otherwise, or

(b) Relinquish exclusive custody and control of the Goods to a person entitled to its possession, a carrier, or governmental authorities, or

(c) Relinquish custody and control of the Goods to any person acting as a common or contract carrier, warehouseman, or similar business.

The Carrier may discharge the Goods as soon as the vessel is ready to discharge, at any hour of the day or night, Sundays and holidays included. See Clause 7.

## 7. MERCHANT'S RESPONSIBILITY

The Merchant warrants that the information on the sea waybill is true, that it has complied with and will comply with all laws and regulations pertaining to the Goods and the carriage of the Goods, and that it has given the Carrier information regarding the Goods including, but not limited to, their contents, weight, value, nature, packaging, that the Goods are properly prepared and packaged for transportation, and that it has given the Carrier information, instructions, and documents necessary for the Carriage. The Merchant shall make

sure that the Goods are safe for transportation, that action will be taken by the Shipper. The Carrier has the right to destroy or render harmless any Goods that the Carrier reasonably believes present a danger.

The Merchant warrants that the vessel will not incur any fine, penalty or other expense because of the Goods, their preparation for transportation, packing, labeling or any other aspect of the Goods.

The Merchant agrees to hold the Carrier harmless and to indemnify it from any expenses or liability incurred, and to defend the Carrier if any aspect of these warranties is violated.

If the Merchant issues its own sea waybill or other shipping document, it warrants that the terms of its sea waybill or document will be no less favorable to the Carrier than this sea waybill. The Merchant agrees to hold harmless and defend, and indemnify the Carrier if its sea waybill or document is less favorable than this sea waybill. The Merchant warrants that it will not issue a bill of lading or other negotiable document. If Containers supplied by or on behalf of the Carrier are unpacked at the Merchant's premises the Merchant is responsible for returning the empty Containers with interiors clean, to the point or place designated by the Carrier, its servants or agents within the time prescribed in the Tariff. The Merchant shall be liable for any detention, loss or expenses which may arise from such non-return.

Containers released into the care of the Merchant for packing, unpacking or any other purpose whatsoever are at his sole risk of the Merchant whilst in his control. The Merchant shall indemnify the Carrier for all loss and/or damage to such Containers. Merchants are deemed to be aware of the dimensions of any Containers released to him.

The Merchant agrees to indemnify and hold harmless the Carrier in respect of any expenses and liability whatsoever, and howsoever arising (including and without limiting the foregoing from negligence or breach of contract or willful act or default of the Carrier or others) in respect of any breach of these warranties.

## 8. CARRIER NOT OBLIGED TO DELIVER IF SEA WAYBILL IS MORE THAN SIX MONTHS OLD

The Carrier is under no obligation to deliver the Goods sea waybill six months or more after the date of this sea waybill.

## 9. APPLICABLE LIABILITY REGIME

Unless the carriage is described in paragraph 9 (a), (b) or (c), the contract of carriage evidenced by this sea waybill is governed by the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, Brussels, August 25, 1924 (as amended by the Visby Amendments in 1968 and by the Brussels SDR Protocol in 1979 (Hague/Visby Rules)) they are incorporated into this sea waybill as if they were fully set forth herein. These rules shall apply before and after the Goods are to be loaded onboard and after they have been discharged from any vessel or other mode of transportation, as well as while the Goods are on board any vessel or other mode of transportation.

(a) If this sea waybill evidences a contract of carriage to or from the United States, it is governed by the United States Carriage of Goods by Sea Act 46 U.S.C. §§ 1300 et seq. (COGSA) and the Pomerene Act, 49 U.S.C. §§ 80101, et seq (Pomerene Act). They are incorporated by reference into the sea waybill as if they were fully set forth herein. The Pomerene Act will apply both to bills of lading that evidence contracts for the carriage of cargo to the United States as well as from the United States. Those acts shall apply before and after the Goods are loaded onboard or discharged from any vessel or other mode of transportation, as well while the goods are onboard any vessel, vehicle, train or other means of transportation.

(b) If this sea waybill evidences a contract of carriage from Australia or New Zealand, it is governed by the Australian Carriage of Goods by Sea Act 1991 as amended (Australian COGSA) or the Chapter XVI of the New Zealand Maritime Transport Act 1994 (New Zealand Act), whichever is relevant in respect of the carriage of goods by sea. Subject to the compulsory application of Australia and New Zealand laws the Carriage is subject to the Hague-Visby Rules.

(c) If, and only if, a dispute that arises from this sea waybill is litigated in a forum that must apply the United Nations Convention on the Carriage of Goods by Sea Act 1978 (the Hamburg Rules) to the sea waybill, the following provision will apply.

This sea waybill shall take effect subject to any national law in force at the place of receipt or place of issuance of the sea waybill making the United Nations Convention on the Carriage of Goods by Sea Act 1978 (the Hamburg Rules) compulsorily applicable to this sea waybill, in which case this sea waybill shall have effect subject to the Hamburg Rules. The Hamburg Rules shall nullify any stipulation derogating therefrom to the detriment of the shipper or consignee.

If any term of this sea waybill is repugnant to the above Rules and/or legislation to any extent, such terms shall be void to that extent, but no further.

(c) Application of CMR and CMI. In the event a dispute that arises from this sea waybill is litigated in a forum that must apply the Carriage of Goods by Road Act of 1965 (CMR) or the International Convention Concerning Carriage of Goods by Rail (CIM 1961) to part of the carriage, that Act will govern only the portion of the carriage that it governs by the force of law.

Notwithstanding any provision of this sea waybill other than the compulsory application of the Hamburg Rules, no provision of any act, statute or other law or rule will be incorporated by reference into this sea waybill if its incorporation would increase the carrier's liability beyond the provisions of the United States Carriage of Goods by Sea Act as if it was enacted in 1936 without any amendment, or by the Hague/Visby Rules, whichever applies to the contract evidenced by this sea waybill.

## 10. LIMITATION OF CARRIER'S LIABILITY

If the Hague Visby Rules or the Australian COGSA or the New Zealand Maritime Transport Act, 1994 apply to the contract evidenced by this sea waybill the Carrier's liability is limited to 666.67 Special Drawing Rights of the International Monetary Fund (SDRs) per package or 2 SDR's per kilogram, which ever is higher.

If U.S. COGSA applies to the contract evidenced by this sea waybill, the Carrier's liability is limited to U.S. $500 per package or for Goods not shipped in packages, per customary freight unit, unless a higher value is declared in the Declared Value box on the face of the sea waybill and a higher freight is paid. Each unpackaged vehicle or other piece of unpackaged cargo on which freight is calculated, constitutes one customary freight unit.

## 11. NOTICE OF DAMAGE

The absence of written notice of loss or damage from the Merchant at the time of delivery of Goods with patent loss or damage, or within three (3) days of delivery of Goods with latent loss or damage, shall constitute prima facie evidence that the Carrier delivered the Goods in the same condition and quantity in which the Goods were delivered to the Carrier at the place or place or port of loading. Notice of loss or damage shall be addressed to the Carrier or his representative at the Place of Delivery, or the Port of Discharge or Place of Delivery as indicated on the face of this sea waybill, or to the Goods, none of be presumed to a third party.

## 12. TIME LIMIT TO COMMENCE SUIT AGAINST CARRIER

In any event, the Carrier will be relieved of all liability unless suit is commenced against the Carrier within one year from the date the Goods were delivered or the date they should have been delivered by the Carrier.

The time limit in clause 12 is the time provided by the time limit in clauses applicable to the contract pursuant to Clause 9, and the Carrier agrees that such time limit is more favorable for the Merchant than the time limit in Clause 9. The Merchant agrees to hold the Carrier harmless for all loss or damage that may arise, due to the Merchant's failure to bring suit within the time limit.

## 13. CHOICE OF FORUM

Any action, claim or dispute that may arise under this sea waybill, or in connection with the carriage under this sea waybill, shall be decided exclusively by the court where the Carrier has its principal place of business and the law of such country will apply. Notwithstanding the general clause above, in the event this sea waybill is governed by U.S. COGSA, the dispute, suit or action shall be brought before the United States District Court for the Southern District of New York, New York and the law of the United States shall apply. Notwithstanding the general clause above, in the event this sea waybill is governed by Australian COGSA, the dispute, suit or action shall be brought before the Supreme Court of New South Wales and the law of Australia shall apply.

## 14. ROUTES / LIBERTIES

The Carrier may at any time and without notice to the Merchant use any means of transport or storage whatsoever, proceed by any route or in any manner in its discretion, whether in proximity or distant to any usual route, and proceed to or stay at any place whatsoever once or more often and in any order. The Carrier has the right to load or unload the Goods at any place and discharge the Goods at any place as determined by the Carrier. The Carrier may use vessels or conveyances other than the Carrier's to carry the Goods, and the Carrier has the right to sub-contract with independent or other carriers, or transshipment.

## 15. SUB-CONTRACTORS AND HIMALAYA CLAUSE

The Carrier may sub-contract any aspect of the Carriage on any terms whatsoever. The Merchant agrees that no claim or allegation shall be made against any person whatsoever by whom the Carriage is performed or undertaken (other than the Carrier) including, but not limited to, the Carrier's servants, agents or Subcontractors which imposes any liability whatsoever on them in connection with the Goods. Should any such claim or allegation nevertheless be made, the Merchant agrees to indemnify the Carrier against all consequences thereof. Every such person shall have the benefit of every exemption, limitation, condition and liberty contained herein and every right, defense and immunity of whatsoever nature applicable to the Carrier to which the Carrier is entitled, as if such provisions were expressly for their benefit and in entering into this contract the Carrier, to the extent of these provisions, does so not only on its own behalf but also as agent and trustee for all such persons. The provisions of this clause including, but not limited to, the undertaking of the Merchant set forth above, shall extend to all claims or allegations of whatsoever nature against other persons chartering space on the carrying vessel.

Without prejudice to the foregoing every such servant, agent and Subcontractor shall have the benefit of all provisions herein benefiting the Carrier as if such provisions

were expressly for their benefit, and in entering into this contract, the Carrier, to the extent of these provisions, does so not only on its own behalf, but also as agent and trustee for such servants, agents and Subcontractors.

The servants, agents and Subcontractors of the Carrier shall be deemed to include persons, vessels or crafts, including the owners, operators and charterers, used by the Carrier in the performance of the Carriage and all such persons shall be entitled to all rights, defenses and immunities available to the Carrier under this sea waybill.

The Merchant further undertakes that no claim will be made against any vessel other than the vessel performing the Carriage hereunder which shall be deemed to include any vessel owned or chartered by or on behalf of the Carrier, or by any company being a subsidiary or affiliate of the Carrier, or by any person being a servant, agent or Subcontractor of the Carrier and if any such claim is nevertheless made to indemnify the Carrier against all consequences thereof.

For the purpose of this Clause, the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of such persons to who the terms and conditions of this sea waybill are extended and each of them and all such persons and each of them shall to this extent be or be deemed to be parties to this sea waybill.

## 16. AGREEMENT TO CLAIM AGAINST NO ONE OTHER THAN THE CARRIER

(a) The Merchant undertakes to make no claim or allegation against the Carrier, whether by the Merchant or any other person who is or who may subsequently be interested in the Goods against any person (other than the Carrier) (whether it is a Subcontractor, principal, employer, servant, agent or otherwise) which imposes or attempts to impose upon such person any liability whatsoever and howsoever arising (including without limiting the foregoing from negligence or breach of contract or willful act or default of the Carrier or others) in connection with the Goods and if such claim or allegation should nevertheless be made to indemnify the Carrier and the person against whom such claim or allegation is made against all consequences of such claim or allegation, and

(b) to indemnify the Carrier against any claim or allegation made against it by any person (other than the Merchant) in connection with any liability in connection with the Goods.

## 17. FREIGHT AND OTHER CHARGES

Freight, whether it is pre-payable or collect, is fully earned when the Goods are delivered to the carrier, its agents or servants. The freight is fully earned in any event without deduction, whether the Goods are lost or not lost. The freight may not be returned.

The Carrier has the right, but not the duty, to inspect Goods inside Containers or other packaging. If the Goods are not described correctly and as a result a lower freight is charged, the Carrier will be entitled to the correct freight and all the costs of calculating and collecting it, including but not limited to attorney fees and other legal fees, and interest on both the amount due and the cost of collection. If the Carrier considers the packing insufficient and re-coopers the Goods, the Merchant will pay the Carrier's charge for re-coopering and will pay the freight as computed for the re-coopered Goods.

## 18. LIEN

The Carrier shall have a lien on the Goods and any document relating to the Goods or any other Goods, documents or property of the Merchant for any amount due the Carrier plus interest and the cost of collecting that amount with interest on those costs. The costs of collecting the amount due will include, but will not be limited to, attorney and other legal fees.

## 19. GENERAL AVERAGE AND SALVAGE

General Average is to be adjusted at any port or place at the Carrier's option and is to be settled according to the York-Antwerp Rules 1994, and amendments. In the event the venture is placed in peril from any cause, even the negligence or other fault of the Carrier for which or for the consequences of which, the Carrier is not liable by reason of statute, law, treaty, convention, contract, or otherwise, the Merchant shall contribute with the Carrier in General Average according to the Statement prepared by the General Average Adjuster. The parties to this sea waybill agree to accept as binding the decisions of the General Average Adjuster as set forth in the Statement and agrees that the General Average Adjuster or the Carrier may exercise a lien against the Goods for General Average or Salvage.

The Merchant shall provide such security and payments on account as are requested by the General Average Adjuster within 30 days of such request. The Merchant agrees to provide such security and to make payments on account before or after the Goods have been delivered from the Carrier. The Merchant agrees that if the Goods have been delivered, or are otherwise not available for the purpose of executing a lien against them, the Carrier may obtain such security and payments on account by exercising a lien against any other property owned by the Merchant.

The Merchant shall also pay salvage and special charges incurred in respect of the Goods. If a salvaging vessel is owned, operated, or chartered by the Carrier, salvage shall be paid as fully and in the same manner as if such salvaging vessel belonged to strangers. The Merchant hereby appoints the Carrier to act on behalf of the Merchant in any salvage proceeding in which the Merchant does not appear.

## 20. BOTH TO BLAME COLLISION CLAUSE

If a vessel on which the Goods are being carried collides with another vessel as the result of the negligence or fault of both vessels, the Merchant collects payment for loss or damage to the Goods from the other vessel, and the other vessel obtains a contribution toward that damage payment from the Carrier, the Merchant will reimburse the Carrier for that contribution.

## 21. DELAY AND CONSEQUENTIAL DAMAGE

The Carrier is not responsible for consequential damages unless the carrier has agreed in writing to be responsible for the certain, specific damage that occurred. The Carrier does not agree to deliver the Goods at any particular time or for any particular market and thus is not responsible for damages alleged to have been caused by delay. If, despite the foregoing provisions, the Carrier is held liable for damages attributable to delay, those damages are limited to the total amount payable as freight for all of the Goods shipped under the sea waybill that included the delayed Goods.

## 22. DECK STOWAGE

The Carrier or vessel owner or operator, not the Merchant has sole authority and responsibility to determine the stowage location of the Goods on vessels that carry the Goods. Goods stowed either by the Merchant or the Carrier in Containers or are otherwise protected from the weather, are likely to be stowed on deck. This sea waybill will not be claused to indicate such deck stowage, and the Hague-Visby Rules, U.S. COGSA, or Australian COGSA or New Zealand Acts, whichever applies to this sea waybill shall apply to such deck cargo as if it were stowed below deck.

Goods that are customarily carried on deck, may be carried on deck without notice to the Merchant and at the Goods and the Merchant's risk.

Goods not customarily carried on deck may be carried on deck at the risk of the Goods and the Merchant with the agreement of the Shipper if the sea waybill is so claused to note that the Goods are carried on deck at the risk of the Goods or the Merchant.

## 23. SPECIAL VENTILATION, REFRIGERATION OR HEATING

Special ventilation, refrigeration or heat, will not be furnished to the Goods unless such special service is contracted for on the face of the sea waybill and such charges paid. The Merchant is responsible for inspecting each Container to determine whether it will carry the Goods. The Merchant agrees to have adequate facilities to assure that the Goods are at the proper temperature before they are loaded into a reefer Container. The Merchant agrees to determine that the proper temperature of each Container and set it in advance of loading the Goods. The responsibility is the Merchant's, and not the Carrier's to set the Container.

The Carrier is not responsible for heating, ventilating or chilling any equipment where the equipment is not operable, and power is not provided to it.

## 24. STEEL, OTHER METAL CARGO, LUMBER AND WOOD

A prudent Merchant of metal cargos, including steel cargo, lumber and wood, will accept some wetting, some rust, some natural oxidation of metal, and warping and bending of metal or wood as a reasonable incident of ocean carriage. The acceptance of the Goods for carriage by the Carrier is not a representation that the Carrier will deliver the Goods without such wetting, rust, oxidation or warping and bending, as is incidental to sea carriage. A limited clausing of the sea waybill, noting such incidental effects is appropriate and reasonable. Any further or more extensive clausing must be approved by the Carrier. Nothing in this Clause is intended to waive any limitation of liability provided to the Carrier by the terms of this sea waybill or law that is applicable to the contract evidenced by this sea waybill.

## 25. FIRE

For loss of Goods due to fire, including to the performance of firefighting, even if that fire is caused by the negligence of the Carrier or its servants, agents, Subcontractors, the Carrier is not responsible for cargo damage unless the fire is attributable to the Carrier's personal fault or privity.

## 26. SEPARABILITY OF TERMS

The terms in this sea waybill shall be separable and if any provisions are unenforceable or void, such unenforceability will not affect the validity of the remainder of the waybill, and the other provisions of this sea waybill will remain in force as if the unenforceable or void provision had not been in the sea waybill. If any portion of this

waybill will have the force of law or incorporated by reference into this sea waybill extend to all parties that agree directly or indirectly with the Carrier to perform all or any part of the contract of carriage. These parties shall include, but shall not be limited to, the following entities: underlying carriers, participating land carriers, stevedores, terminal operators, watching services, vessel operators, voyage charterers, time charterers, slot or space charterers, direct and indirect sub-contractors, independent contractors, and every servant or agent of the Carrier or of a subcontractor.

For the purpose of this Clause, the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of such persons to who the terms and conditions of this sea waybill are extended and each of them and all such persons and each of them shall to this extent be or be deemed to be parties to this sea waybill.

Exhibit D, Page 1 of 1