# CONFIRMATION

I, the undersigned Dr. Joachim F. Bartels, lawyer admitted at the bar of Bremen / Germany, have personally checked the attached English translation of the judgment by the Hamburg Regional Court (Landgericht Hamburg) dated 27th September 2006 with File-No. 417 O 230/05.

To the best of my knowledge I confirm that this translation is correct.

I may add here that I personally acted for Messrs J. H. Bachmann in these proceedings at the Hamburg Court.

Bremen, this 13th February 2007

_____
(Dr. Joachim F. Bartels)

Office Translation

Court of Hamburg

Judgement

File-No. 417 O 230/05                                    Rendered on: 27.9.2006

signed: Pfeiffer
.............

In the matter

**Delta Lloyd Schadeverzekering N.V.,**
represented by their directors, .......................

- Claimant -

represented by:   Law firm Hasche pp.
................

versus

**Gericke GmbH Internationale Spedition,**
represented by their managing director Alfons Scherer,
................

- Defendant -

represented by:   Law firm Scheer und Stahmer
................

1)   **J. H. Bachmann GmbH,**

represented by:   Law firm Blaum pp.
..............

the Court of Hamburg, Chamber 017 for Commercial Matters, finds

by the Presiding Judge Müller-Fritsch
and the Commercial Judges Dr. Möhlmann and Seacker

upon the oral hearing of 14.6.2006 as follows:
1. The Defendants have to pay to the Claimants an amount of € 652,017.03 plus interest at 5 percent above the current prime rate as from 21.12.05.
2. The exceeding claim is dismissed.
3. Defendants bear 86 % and the Claimant 14 % of Claimants' and Defendants' lawyers fees and the court fees. The Third Party bears 86 % of their own lawyers fees and the Claimants bear 14 % of Third Party's lawyers fees.
4. This judgement is preliminarily enforceable after depositing a security amount of 110 % of the amount to be enforced.

## FACTS:

The Claimant, a Dutch insurance company, claims from the Defendants indemnity for damages to a transformer that had fallen off a flat bed trailer during the last leg of transport from Regensburg to Anchorage.

1. Claimants say that they were the leading transport insurers of Messrs SGB GmbH in 2004. Their co-insurers had authorised them to claim damage in their own name. They had paid for the damage and the claims had been assigned to them.

   In 2004, Messrs SGB sold two transformers to Messrs Chugach in Anchorage at a total price of US $ 1,678,848 and undertook to deliver free house building site in Anchorage. They had engaged the Defendants with the transport according to the contract dated 17/27.5.04, either at total lump sum price or at least at lump sum prices for each leg of transport.

   The Defendants had engaged with the transport the Third Party Bachmann, who had taken over both transformers in new, tested and operative condition. During transit in Alaska from the railway station to the intended place of delivery with the consignee one of the transformers fall off the flat bed trailer and suffered a constructive total loss. According to expert findings the causes were insufficient road safety of the used flat bed trailer, a considerable overloading of the vehicle, non-centric loading, unsuitable and rusty hawsers, and heavy faults of the (contrary to contract sole) driver when turning into a bumpy side road at night and at snowfall.

2. The Claimants therefore apply – with this suit served upon on 21.12.05 – for:

   a. ordering the Defendants to pay to the Claimants € 760,252.49 plus interest of 5 per cent above the prime rate since bringing this suit and
   b. alternatively: ordering the Defendants to assign to the Claimants their claims under the contract of affreightment with the Third Party concerning the transport of two transformers from Messrs SGB to Chugach Electric Association Inc., 5601 Minnesota Drive, Anchorage, Alaska 99516300 USA (date of loading

18.10.2003) because of and in connection with the damage to the transformer No. 101851.

Defendants and Third Party apply for dismissing both applications.

3. The Defendants say the Claimants have not sufficiently proven their authorisation to bring suit, that is why they have to deny the authorisation in ignorance. Payment has not been proven either and the assignment is invalid.

The Defendants had only dealt with the forwarding handling but had not been engaged to load the cargo; neither had lump sum payments been agreed upon nor charged. There could only be claims against the Third Party, which had been engaged by the Defendants to carry out the actual transport; the Defendant had chosen a reputable and competent firm.

It is also denied in ignorance that the transformer had been in good condition when taking delivery as well as the extent of the alleged damage. The damaging event was neither due to an unsuitable truck nor due to incorrect or insufficient loading or securing or driving failure of the driver, but was not preventable. At any rate the parties concerned cannot be blamed with recklessness or gross negligence least of all with intention.

The Third Party has basically joined the submissions by the Defendants.

4. As regards the further extensive submissions by the Parties, it is referred to their written submissions and attachments. Further details are stated below (Reasons for Decision), in particular as to the contents of the attachments and as to the amount of claims, differentiated between legal and factual evaluation. The submissions by the Claimants of 14.7.06 and 16.8.06, by the Defendants of 19.7.06 and by the Third Party of 8.7.06, 24.7.06, 18.8.06 and 4.9.06, which had been presented after final oral hearing of 14.6.06, have been taken note of.

REASONS FOR DECISION

I. The admissible suit is mostly justified.

1. The Claimants are entitled to the claims.

   a. They have proven by the insurance policy Attachment K4 (in Dutch) or K4a (in German) that they are the transport insurers of Messrs Tessag SGB GmbH. The contract partner of Chugach is in fact SGB, but this latter firm is identical with Tessag SGB GmbH as the notarial deed of 23.5.01 shows (K16).

        Claimants paid to Messrs Smit an amount of € 720,240.24. Smit had represented Messrs Tessag SGB GmbH in this contract (K1) and accepted payment on their behalf. Payment has been proven by the documents K23; Defendants have no longer denied this payment after these documents were submitted.

        Upon payment the claims had been transferred to all insurers pro rata according to Art. 284 of the Dutch Commercial Code.

b.   Claimants have been authorised by all co-insurers to assert the claims in their own name (declarations K13). As far as the Defendants still deny that these declarations were signed by the entitled persons, the court does not pursue this objection. Defendants have not shown why this far-fetched objection had been raised and that this is indeed so. As evidenced by the policy (last page), Claimants were even entitled to sign the policy on behalf of their co-insurers.

        This authorisation is a so-called representative action (BGH NJW 1981, 2640; Appeal Court Munich, TranspR 1997, 193, 194; Koller, Transportrecht, 5th edition 2004, § 425 German Commercial Code, No. 55), which is admissible once the insurers have paid for the damage.

        The title to sue cannot and need not be based on the assignments by Smit of 17.11.05 (K11) and by SGB of 18.11.05 (K12). They have been signed after the payment of 17.3.05 and 23.5.05 (K23) and therefore after the transfer of the claims to the insurers according to Dutch law as submitted by claimants (corresponding to § 67 VVG = German law on insurance contracts).

2.   Claimants and/or their co-insurers have a claim on the merits under the contract between Messrs Tessag SGB and the Defendants.

    a.   It is a forwarding contract according to §§ 453 ff HGB [German Commercial Code], which is subject to German law because it was concluded in Germany between German firms. It is a forwarding contract because Defendants had undertaken to see to the shipment of the transformers but not do carry this out personally.

        On the other hand, Defendants are liable like a carrier as they had agreed on a price which included the carriage (§ 459 I HGB). This cannot be seen from the skeleton contract of 17./27.5.04 (K3) as this contract does not fix any prices. The corresponding pricelist (K18) with the agreed fixed freight rates is not valid either because it only comprises transports of up to 1,100 km. A written agreement for this transport does not exist and the contents of oral agreements are in dispute. The court, however, infers the agreement on fixed costs from Defendants'

invoice (K25) as Defendants do not put forward that they had invoiced contrary to the contract.

Defendants' invoice charges lump-sums for each leg of transport, in one case also the expenses for encountered difficulties in transit. The agreement of such lump-sums corresponds to a total lump-sum agreement (BGH NJW-RR 1999, 680, 683 = BGH BB 1999, 812f = TranspR 1999, 164f); the crucial point is that it had not been agreed that the forwarding agent charges the incurred expenses and adds a commission but that a lump-sum is charged consisting of expenses and an own remuneration. The skeleton contract (K3), which is to be applied for this transport (heavy transports have only been excluded as from 1.7.04 and the contract in dispute had been concluded earlier), does not mention any commission either.

b. The liability of Defendants arises from § 425 HGB. According to this provision the carrier is liable for the damage due to loss of or damage to the goods during the time from taking over the goods for carriage to delivery.

This transport concerned several different means of transport (so-called multimodal transport), namely by truck from Regensburg to Antwerp, by sea to Tacoma, USA, by railway to Anchorage, USA, and from there to the place of delivery in Anchorage by truck. If the place of damage is known, that law is applicable that would be applicable for the relevant leg of transport, § 452a HGB. It is undisputed that the damage occurred during the last leg of transport during the transport on the flat bed trailer, that is a motor vehicle. When determining the applicable law for this leg of transport, the actual agreed law in the multimodal transport contract is irrelevant but the hypothetical law which would have been applicable without any agreement is to be applied. According to Art. 28 EGBGB, Art. 6 EGHGB, the applicable substantive law has to be determined only with reference to the particular leg of transport (Koller, TranspR, 5th edition, § 452a HGB, No. 5 etc.).

Accordingly, in the Judge's view German law is applicable. Both parties to the contract of affreightment have their place of business in Germany and are not only related by this actual contract of affreightment but also by the skeleton contract which obligated Defendants to perform the whole forwarding and which is undoubtedly subject to German law. Neither party had considered US law or rather the law of the Federal State of Alaska as the applicable law.

The German law is not overridden by an international law. As this leg of transport does not relate to two states, the provisions of the CMR are not applicable, Art. 1, 2 CMR.

    Therefore, German law is applicable and thus the liability according to § 425 HGB.

    As § 425 I HGB provides, the damage to one of the transformers undisputedly occurred during the time from taking over the goods to delivery.

c.   An exemption from liability is not applicable. Defendants neither invoke deficiency of packing (§ 427 I 2 HGB) nor – because they did the loading themselves – deficiency of stowage (§ 427 I 3 HGB). It cannot be inferred from the submissions by Defendants and Third Party either that the damage was caused by circumstances which they (or rather their subcontractors) could not prevent or of which the consequences were inevitable (§ 426 HGB).

    They deny all causes which had been contended by Claimants referring to the investigation of damages but do not at all explain why the transformer had fallen off the flat bed trailer. Only Third Party admits that possibly a fault on the part of the driver Crowson (too narrowly turning to the left into the last road before the building site) might have contributed to the event.

d.   It does not matter whether Defendants and Third Party may invoke the limitation of liability according to § 431 I HGB. These rules provide a limitation of 8.33 units (special drawing rights of the International Monetary Fund) per kg gross weight of the consignment.

    As regards the maximum limit of liability, the value of the unit on the day of rendering the judgement is relevant (BGH NJW-RR 1997, 1121, 1122). An inquiry with the "Transport-Informations-Service" of the German transport insurers (www.tis-gdv.de) resulted in one unit to be more than € 1.10 on the day of rendering the judgement. As proven by the invoice (K24), the gross weight of the transformer was 210,300 lbs (other sources mention 234,000 lbs), which is equivalent to 95,390.59 kg. Thus the maximum amount of indemnity amounts to more than € 874,064.00).

    The claimed amount is below this amount.

e.   Defendants cannot invoke the further limitation of liability according to No. 23 ADSp [German Forwarders General Business Conditions]. According to No. 21.1.3 ADSp the indemnity would be limited to 2 units per kg of the affected part of the consignment if carriage by sea were included.

    The skeleton contract (K1) indeed says that Defendants act on the basis of the ADSp. However, as Claimants undisputedly say this is a part of general business conditions, the ADSp themselves are general business conditions (Koller,

a.a.O., ADSp). According to § 452a HGB, only the statutory law is applicable, the concluded contract and general business conditions do not fall hereunder (Koller, a.a.O. No. 5).

Furthermore, this limitation of liability had not been agreed effectively. It is doubtful whether the mere message should limit also rights of Messrs Tessag SGB. According to § 499 II 1 HGB, a reduction of the legal minimum indemnity would be valid in general business conditions only if highlighted typographically, that is both in the printed version of the ADSp (which Defendants have not submitted) and in the contract itself (Koller, a.a.O., § 449 No. 62). This is not the case here.

3. Defendants are entitled to claim a partial amount of € 630,895.58 (the calculation can be seen from the attachment to this Judgement).

   a. This concerns the transformer itself. As evidenced by the contract of 4.1./4.5.04 (K1), Messrs SGB sold the transformer at US$ 1,678,848 / 2 = US$ 839,424 (as partial amount of two identical transformers). Claimants have not explained why the commercial invoice (attachment K 24) says that each transformer costs US$ 840,972. At the rate of exchange of US$ 0.7552 / 1.00 €, which is undisputed between the Parties, US$ 839,424 are equivalent to € 633,933.

   The Judge takes it that the transformer was faultless at the time of taking delivery by Defendants or rather their subcontractor. This had first been denied by Defendants and Third Party, but after submission of attachment K27 (inspection certificates) they did no longer do so. They did not give any reason for this denial, in particular they did not mention that the second transformer, which had been delivered at the same time and which was fully identical, was not operable.

   The Judge further takes it that the transformer suffered a constructive total loss. By submitting numerous photos of the interior of the machine as well as the expert report (K19), Defendants have proven this convincingly and Defendants have not replied hereto any more after having initially denied this. They should have done this because the survey subsequent to the damage must have been taken place either in the presence of their subcontractors or they must have had at least the chance to inspect the damage themselves or by their subcontractors. They cannot rely on denial with ignorance.

   b. According to the statement in the survey report (K19), Claimants deducted from the damage amount not incurred expenses for not needed parts in the amount of US$ 40,752.67 (= € 30,776,42) less return transport costs of US$ 10,400 (= € 7,582.21) and storage costs of US$ 600 (= € 453.12) and added repair costs for the shock recorder of US$ 632.52 (= € 477.68). Furthermore, they deducted an amount of US$ 5,160 (= € 3,896.83) for not performed works and the pro-

ceeds from the sale of the damaged transformer of US$ 16,880 (= € 12,747.78). Third Party did not say anything hereon and Defendants denied these amounts only with ignorance. This is not sufficient. Claimants submitted all relevant invoices (attachment K19), whereas Defendants did not say anything in detail but only denied generally not giving any reason for their denial. In the end all these amounts reduce the damage amount regarding the transformer.

As far as the transformer is concerned, the Judge has reassessed the damage amount at US$ 787,903.85 (= € 595,024.90).

c. Salvage costs have to added. Although according to § 432 HGB salvage costs are basically not to be reimbursed (§ 432 S. 2 HGB, Koller, a.a.O, § 432 No. 9), in the present case these costs are at the same time costs incurred for loss assessment which are to be reimbursed under § 430 HGB. In order to ascertain the exact extent of damage, the transformer had to be inspected thoroughly. As the photos show this could not be done on the spot because the transformer was lying in the middle of a busy junction.

By submitting the invoice (K19) Claimants demand an amount of US$ 39,400 (= € 29,754.88) in this regard. Defendants only deny this, which is not sufficient. Their subcontractors were involved in the removal (they performed the return transport) and could witness the taken measurements (salvage by crane). Defendants did not say whether they had asked for information and why they were of the opinion that the invoiced remuneration was not appropriate.

d. Furthermore, survey and expert costs incurred by Messrs SGB have to be added (OLG Düsseldorf, TranspR 1984, 16, 17; OLG Hamm, TranspR 2000, 361f).

In this regard Claimants demand payment of the invoice (K9) for US$ 4,850 (= € 3,663.72) for the survey by Messrs Sherman & Associates Inc., who provided Messrs SGB with a first clarification of the event (K9c) and payment of the invoice for US$ 3,248.14 (= € 2,453) (K9h) for the survey by Messrs Electrical Technologies & Supply Inc., who ascertained the extent of damage.

Both items are basically to be reimbursed. The reliable ascertainment of the course of events was inevitable because the driver of Defendants' subcontractor eluded the ascertainment by absconding after the accident without informing the police. These submissions by Claimants proven by newspaper reports has remained undisputed. The ascertainment of the extent of damage could only be done by experts on site, was necessary for the utilisation of the damaged transformer and was more advantageous than a journey by SGB's employees.

The objections to the amounts raised by Defendants and Third Party are irrelevant as already said.

> In total a damage amount of US$ 835,401.99 (= € 630,895,58) has to be reimbursed. This amount is below the maximum limitation of liability according to § 431 I HGB.
>
> Even if the question of non-applicability of limitation of liability according to § 435 HGB does not arise, the following has to be pointed out:
> According to the submissions which reached the court after the oral hearing, the assumption (based on the submission by Third Party of 20.3.06, p 4, page 47 of the court file) that the flat bed trailer turned into a bumpy side road cannot be held up. If the photos submitted by Claimants do show the condition of the road correctly, the road was not bumpy at the place of accident. The new photos, however, point to another course of events. Transformer ended up lying only about 2 metres away from the left side of the road and was fallen off the flat bed trailer to the right. It can be assumed that the transformer could end up like this only if the left wheels of the flat bed trailer went over the curbstone of about 15 cm height, that is if – as Third Party considers it possible – the corner was cut. If it is taken into account that Claimants undisputedly contended that already the loading of the truck was not centrally because of the uneven ground, that the truck had no steerable rear axles contrary to the flat bed trailer used at the first transport and that there had been difficulties exactly at this end at the preceding transport, there is clear evidence that the driver acted recklessly and denied the possibility of an accident. He drove so narrowly around the corner that he did not see the curbstone hidden under snow although the existence and height was evident on site.

6. As far as Claimants demand an amount of US$ 116,730.94 (= € 88,155.21), the suit is unsubstantiated. This amount is said to be for imaginary lost profit which according to the policy Claimants and their co-insurers owe their insured beyond the damage amount; according to what Claimants said, this amount is "to compensate the profit which the buyer of an object cannot make due to the loss". This contractual obligation of the Claimants vis-à-vis their assured may exist. However, it is no adequate consequence of the violation of the transport contract by the Defendants but an indemnification promised for totally different reasons which is not to be indemnified. This does not concern the buyer or consignee of the goods either but the consignor who will not have paid the buyer this amount because the another transformer was delivered.

7. Claimants are, however, entitled to demand their own costs for the ascertainment of damage, namely the costs which had been paid to the surveyors Expertisenbüro Binnendijk-Bree BV, invoices K28/28a (€ 11,339.15 for 22.5 hours for the time up to 27.12.04 and travelling expenses) and K6/K6a (€ 9,722.30 for 32 hours for the time up to 18.5.05 and expenses of Lloyd's agent in Anchorage). They had incurred these costs in preparation of this law suit.

These costs were necessary. Claimants had to expect that they would be successful with this suit against the party(ies) having caused the damage only if they could substantiate the course of the accident and the cause. Defendants' behaviour in this law suit shows the correctness of this assumption: not only did the direct causer, the driver Crowson, elude the ascertainment of damage on site by absconding, but also did Defendants and Third Party vehemently dispute the course of events in all points and did not at all contribute to clarification on their own. Only by investigations and the survey report of the Expertisebüro (K19) were Claimants able to submit correctly.

As Defendants and Third Party correctly assume, the legal ground may not be seen in § 91 ZPO [Code of Procedure], as here the obligation to bear the costs that are necessary for pursuing the right are included, but this regulation is no separate substantive law on indemnification (Zöller-Herget, ZPO, 25th edition, § 91 No. 11). But the claim for indemnification may also be based on § 430 HGB. Also these costs relate to the ascertainment of damage which have to be reimbursed (see above 5d). These costs had not been incurred by Messrs SGB, as they were not necessary for them as assured, because Claimants already had to indemnify them on the basis of the preliminary findings in the survey report mentioned under 5d. It is the Defendants, however, who had incurred these costs. Therefore, this is like pursuing the loss of a third party (Palandt/Heinrichs, BGB, 65th edition, § 249 No. 113f), the present case only being unusual because the initially not entitled damaged third party is claiming and not the initial beneficiary who had no damage. This is, however, based on the fact that the claim was subrogated to the Claimants (and to the represented co-insurers) according to § 67 VVG or rather Art. 284 of the Dutch Commercial Code and cannot be in favour of Defendants.

Neither Defendants nor Third party had raised objections to the amount of costs. They took the view that the question of reimbursement can and has to be assessed exclusively in the cost procedure. The Judge does not follow this view. The cost procedure is a summary proceeding and is not always suitable to decide substantive claims. There is, however, a right of legal protection if during the law suit dispute arises whether costs are to be reimbursed or not, that this an interest to integrate the costs into the law suit besides the main claim (Zöller, a.a.O. No. 12).Claimants further demand € 18,890.80 due to a price rise for materials. They said that Messrs SGB had had to produce a new transformer and to deliver it to their buyers in order to fulfil their obligations regarding the damaged transformer, and in fact at the same agreed price. According to the calculation of Messrs SGB (K10), the production of the substitute transformer had cost € 18,890.80 more – mostly because of an increase of the prices for crude copper. Claimants have not paid this amount to SGB because the terms of the insurance contract do not provide this, but claim this amount as subrogated right.

They are not entitled to this claim. Although this claim would be reimbursable according to § 435 HGB if Defendants and/or their servants had caused the damage with wilful misconduct or with gross negligence, this, however, cannot be found because the submissions which reached the court after the oral hearing cannot be considered.

- 11 -

As neither Defendants nor the co-insurers have reimbursed this amount, Defendants cannot claim this amount as a legally subrogated claim (§ 67 VVG or Art. 284 Dutch Commercial Code) but only if this claim had been assigned to them effectively. As the assignment was made in Germany, the effectiveness of same has to be judged under German law.

In this regard the Judge takes the same view as Defendants, namely that the assignment is invalid due to violation of the law on legal advice (RBerG) according to § 134 BGB. According to Art. 1 § 1 RBerG the recovery of claims of third parties or of subrogated claims for the purpose of recovery is basically subject to permission and Claimants have not contended or proven such a permission after Defendants' denying it. This does not concern the recovery of insured's self-retention agreed between insurers and insured by the insurers which recent jurisprudence of appeal courts no longer consider as a violation of the law on legal advice mostly for reasons of impracticability (OLG Karlsruhe, NJW-RR 2005, 909; OLG Köln, VersR 2004, 1456; OLG Stuttgart, NJOZ 2004, 3401; summarising this: Sabel, NVZ 2006, 6f). This is rather an item which does not belong to the insured damage , but it is an basically not insured item, the recovery of which is more than a mere auxiliary service.

9. As a result the main claim in the amount of € 652,017.03, therefore, is successful and the further claims have to be dismissed. Claimants' claim for interest is based on §§ 291, 288 BGB [Civil Code].

10. The decision on costs has been based on §§ 92, 101 ZPO. The decision on the preliminary enforceability has been based on § 709 ZPO.

signed:
Müller-Fritsch         Dr. Möhlmann         Saecker

Exhibit B, Page 12 of 12

Translation (120) doc