Thomas A. Matthews, Esq.
Matthews & Zahare, P.C.
431 W. 7th Ave., Suite 207
Anchorage, AK 99501
Phone: (907) 276-1516
Fax: (907) 276-8955
tom.matthews@matthewszahare.com

Bruce E. Falconer, Esq.
Boyd, Chandler & Falconer, LLP
911 W. 8th Ave., Suite 302
Anchorage, Alaska  99507
(907) 272-8401
bfalconer@bcf.us.com

Counsel for Defendant Northstar Trucking, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| J.H. BACHMANN GmbH and UTC BACHMANN, INC., <br><br>         Plaintiffs, <br>     vs. <br><br> BRAGG INVESTMENT COMPANY, INC. et al., <br><br>         Defendants. | Case No. 3:06:cv 00145 TMB <br> Case No. 3:06:cv 00274 TMB <br>       (Consolidated) |
| DELTA LLOYD SCHADEVERZEKERING N.V., <br><br>         Plaintiffs, <br>     vs. <br><br> UTC BACHMANN, INC., et al, <br>         Defendants. | **NORTHSTAR TRUCKING, INC.'S SUPPLEMENTAL MOTION TO COMPEL AGAINST BRAGG** |

Pursuant to this court's invitation (Docket 147), Northstar Trucking ("NTI") submits this supplemental memorandum in support of its motion to compel discovery from Bragg (Docket 140). Simply put, Bragg has ignored its discovery obligations in this case and the discovery issues raised in NTI's motion remain outstanding.

On March 20, 2007, Northstar served its first Request for Production upon Bragg. To date, Bragg has never responded. It has not objected to the requests, nor indicated that it has no responsive documents. Instead, Bragg has simply shirked its discovery responsibilities and made empty promises about "forthcoming" documents.[1]

It is clear from the discovery to date that Bragg must have responsive documents. Bragg witnesses were deposed in California and identified documents that are responsive to NTI's request.[2] Other parties' disclosures in this case demonstrate that Bragg created numerous documents during the course of the transaction that have never been produced.

A brief summary of the transaction may help. This matter arises from damage to a transformer intended for delivery to a Chugach Electric Association site in Anchorage, Alaska. The transformer was manufactured in Germany and had been

---

[1] In its September10, 2007 Response (Docket 144), Bragg claims there is no reason for the motion because "the documents are in transit." In the intervening three months, the documents still have not arrived. On October 30, 2007 Bragg's local counsel was asked about the status of the promised records during a deposition proceeding. Mr. Longacre responded that he had received some documents, but had not had a chance to go through them. Mr. Longacre was leaving town for several weeks, and promised to provide the documents at the end of November. On November 20, all counsel held a conference call to address the status of discovery. In the call, Mr. Longacre was again pressed about the discovery and long-promised documents. Mr. Longacre advised the group that the documents he had received were not what had been requested, and more documents were on their way. He promised to provide the records by the middle of last week (November 28, 2007). On November 30, 2007 Mr. Longacre advised counsel that the promised Bragg documents were being recopied, and would be sent out Express Mail. No documents have been produced.

[2] Justin Gilmet testified that he had an entire file relating to the transformer project that he left in the company's Fontana office when he left Bragg's employment in July 2005. See Exhibit A (Gilmet Depo at pp. 66-69). Gilmet's file has never been produced.

NTI's Supplemental Motion to Compel
*Bachmann vs. Bragg Inv., et al; Delta Lloyd vs. Bachmann,* 3:06:cv:00145 TMB (Consolidated)
TAM:jlw/1442-1/SuppMtnCompel                    Page 2 of 6

transported by ship to the Port of Anchorage. The transformer was offloaded in Anchorage by North Star Terminal & Stevedore and placed aboard a lowboy trailer owned by Alaska Heavy Haul Transport (Shane Crowson). Shane Crowson was driving the truck pulling the trailer carrying the transformer, when the transformer fell off the trailer and was extensively damaged. The following flow chart traces the movement of the transformer from Germany to the United States: SGB (German) → Gerike (Germany) → Bachmann GmbH (Germany) →UTC Bachmann (USA) → Bragg (USA). Within the USA, Bragg contracted with UTC Bachmann to move the transformers from Tacoma to their final resting place in Anchorage. As should be evident from the flowchart, the transaction involved many steps, and should involve a significant paper trail.

Bragg's Initial Disclosures contain 32 pages of documents.[3] It charged UTC Bachmann, Inc the sum of $183,600 to transport two transformers by rail from Tacoma to Anchorage and to "Offload, transport and set 2 transformers at Chugach."[4] Bragg employed Justin Gilmet in its "Heavy Transport" company based in Fontana, CA to be the principal representative to negotiate the deal for transportation of the two transformers at issue.[5] Gilmet apparently communicated with other Bragg employees in sister companies located in Long Beach.[6] According to Gilmet, he had contact with representatives of UTC Bachmann in Miami, FL and elsewhere. He may have had contact with Bachmann GmbH, but was unsure

---

[3] *See* Exhibit B.
[4] *See* Exhibit B at Bragg 0023
[5] Gilmet Depo at p. 87.
[6] It appears that Bragg Investment Company is a holding company for the Bragg family of companies, which is in turn owned by the Bragg Family. Although the corporate structure is not entirely clear, it appears from the Parties' records in this case that at least the following employees of Bragg companies had involvement of some kind in the transaction: Justin Gilmet, Kirk Martin, Chris Bragg, Scott Bragg, George Bragg, Sheila Archuletta, Suzanne Bragg-Coffin, Maryann Poole. *See* Exhibit C, Martin Depo at pp. 23-24.

NTI's Supplemental Motion to Compel
*Bachmann vs. Bragg Inv., et al; Delta Lloyd vs. Bachmann,* 3:06:cv:00145 TMB (Consolidated)
TAM:jlw/1442-1/SuppMtnCompel                                                    Page 3 of 6

without access to his file. He also had e-mail and telephone contacts with other Bragg Company personnel.[7]

On the other side of the transaction, Gilmet had contact with Northstar Trucking, Inc., North Star Stevedoring, Crowson, Chugach, Alaska Railroad, the ports of Tacoma and Anchorage, and perhaps others. Gilmet routinely used e-mail, fax, cellular phone, and traditional phone services for communications.[8] He insists that some terms of the deal were verbal, yet others would have to be in writing.[9] Under the circumstances, Gilmet's file is imperative to a complete understanding of the deal.

In addition to Justin Gilmet, Bragg employee Kirk Martin also had substantial involvement in the transformer move. Martin is an employee of Bragg Crane & Rigging, and was tasked with overseeing the actual loading and unloading on behalf of Bragg. Martin travelled to Anchorage twice to oversee movement of the transformer. He communicated with Justin Gilmet and others within the Bragg organization by phone, cell phone, e-mail and fax. Significantly, Martin participated in a high level Bragg meeting upon his return to Long Beach after the incident. Martin turned over all of his documents and notes to Bragg Management at that meeting.[10]

Perhaps most significantly, Martin testified that he took original bills of lading with him to Alaska for the transformer move.[11] Upon delivery of the first transformer, Martin had Chugach sign for the transformer and kept the original bill of lading.[12] He did not give a copy to Chugach, and apparently no one else involved

---

[7] Exhibit A, Gilmet Depo at pp. 126-128; Exhibit D (Depo. Exhibit 17).
[8] *Id.* A at p. 127.
[9] Exhibit A Gilmet Depo at pp. 74-77.
[10] Exhibit C, Martin Depo at pp. 23-24.
[11] Exhibit C, Martin Depo at pp. 92-94.
[12] Exhibit C, Martin Depo at p. 90.

NTI's Supplemental Motion to Compel
*Bachmann vs. Bragg Inv., et al; Delta Lloyd vs. Bachmann,* 3:06:cv:00145 TMB (Consolidated)
TAM:jlw/1442-1/SuppMtnCompel                                                      Page 4 of 6

has ever been provided a copy.[13]  After returning to Long Beach, Martin delivered the bills of lading to the assembled management group at Bragg during his debriefing.[14]  It has not been seen since.

In this case, Bragg claims it contracted with NTI to move the transformer and that Crowson was working as a subcontractor to NTI at the time he dropped the transformer.  NTI vehemently disagrees with these allegations.  There is no written contract between Bragg and NTI and no written agreement between NTI and Crowson.  It is NTI's position that Crowson was working directly for Bragg.  Under the circumstances, having access to Mr. Gilmet's file and the other Bragg documents is all the more critical since Gilmet may have made notes or written e-mails to others at Bragg about the transportation arrangements.  Moreover, Gilmet may have had communications directly with Crowson or others before the accident which bear directly upon the allegations in this case.  All the parties have right now is after the fact testimony without the benefit of essential records to show what was and was not agreed to.

Throughout the files of the other parties to this case, e-mails and faxes from Gilmet to various persons appear.[15]  Yet, the vast majority of these documents have never been produced by Bragg.[16]  The terms of the transactions involved in this case are central to a determination of liability for the damaged transformer.   NTI and the other parties are entitled to know and discover the details of Bragg's involvement, and understanding of the transactions.

In sum, NTI and the other parties are entitled to discover the full spectrum of Bragg's involvement in the transformer move.  NTI's Requests for Production requested thirty-two (32) categories of documents. Bragg has never objected or

---

[13] Bragg apparently did not disclose the existence of this bill of lading to the state, federal, and private investigators who were trying to determine responsibility for the transformer after the loss.
[14] Exhibit C, Martin Depo at p. 91.
[15] Exhibit A, Gilmet Depo at p. 126; Exhibit D (Depo Exhibit 17).
[16] Compare Exhibit B Bragg's Disclosures, with Exhibit D (Depo Exhibit 17).

NTI's Supplemental Motion to Compel
*Bachmann vs. Bragg Inv., et al; Delta Lloyd vs. Bachmann,* 3:06:cv:00145 TMB (Consolidated)
TAM:jlw/1442-1/SuppMtnCompel                                                                 Page 5 of 6


responded to the discovery. It has simply shirked its responsibility. All that Bragg has ever produced is an increasingly stale series of excuses. NTI requests the court grant its motion to compel and order Bragg to pay the costs of this motion.

Dated this 7th day of December 2007 at Anchorage Alaska.

                MATTHEWS & ZAHARE, P.C.
                Counsel for Northstar Trucking, Inc.


By: s/Thomas A. Matthews
    Thomas A. Matthews ABA 8511179
    Matthews & Zahare, P.C.
    431 W. 7th Ave., Suite 207
    Anchorage, AK 99501
    Phone: (907) 276-1516
    Fax: (907) 276-8955
    tom.matthews@matthewszahare.com

CERTIFICATE OF SERVICE
I certify that on 7th day of December 2007
I caused to be served by electronic mail to:

Frank A. Pfiffner, Esq.
fap@hbplaw.net
*Counsel for Plaintiffs Bachmann/*
  *Defendants UTC Bachmann, Inc.*

Thomas G. Johnson, Esq.
tgjohnson@bmjlaw.com
*Counsel for Def. North Star Terminal*
  *& Stevedore LLC of Delaware*

Bruce E. Falconer, Esq.
bfalconer@bcf.us.com
*Counsel for Northstar Trucking, Inc.*

Roy L. Longacre, Esq.
longacare@alaska.com
*Counsel for Def. Bragg Investment Co.*

Robert M. Libbey, Esq.
Colleen A. Libbey, Esq.
boblibbey@alaska.net &
clibbey@alaska.net
*Counsel for Shane Crowson*
  *d/b/a Alaska Heavy Haul Transport*

Marc G. Wilhelm, Esq.
mwilhelm@richmondquinn.com
*Counsel for Delta Lloyd*
 *Schadeverzekering N.V.*

s/Thomas A. Matthews

NTI's Supplemental Motion to Compel
*Bachmann vs. Bragg Inv., et al; Delta Lloyd vs. Bachmann,* 3:06:cv:00145 TMB (Consolidated)
TAM:jlw/1442-1/SuppMtnCompel    Page 6 of 6